**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                                    Date: July 26, 2024

Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING MOTION TO REMAND [12], REMANDING CASE TO ORANGE COUNTY SUPERIOR COURT, AND DENYING AS MOOT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [15]**

  Before the court is Plaintiff Corey Hernandez's ("Plaintiff") Motion to Remand ("Motion" or "Mot."). (Dkt. 12.) Defendants U.S. Bank National Association ("U.S. Bank"), U.S. Bancorp ("Bancorp"), and Nick Pirro ("Pirro") (collectively, "Defendants") oppose the Motion ("Opposition" or "Opp."). (Dkt. 18.) Plaintiff also filed a Reply in support of the Motion ("Reply"). (Dkt. 20.) The court found this matter appropriate for resolution without oral argument and took it under submission. (Dkt. 22 (citing Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute").) Based on the state of the record, as applied to the applicable law, the court **GRANTS** the Motion and **REMANDS** this case to Orange County Superior Court.

**I. Background**

  On July 6, 2021, Plaintiff began work as a Mortgage Non-Bank Loan Originator for U.S. Bank and Bancorp in Newport Beach, California. (Dkt. 1-1 (Complaint, "Compl.") ¶¶ 1, 10.) "Throughout his employment, Plaintiff suffered from attention deficit hyperactivity disorder ('ADHD'), chronic anxiety and major depressive disorder." (*Id.* ¶ 11.) In October

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                                        Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

2022, those conditions began affecting Plaintiff's ability to work, and "[h]is doctor therefore directed him to take a medical leave to treat, and recover from, his mental disabilities." (*Id.*) From October 17, 2022, through January 6, 2023, Plaintiff went on an approved medical leave of absence. (*Id.* ¶¶ 12-13.) During this time, Plaintiff communicated with Todd Godfrey, the person to whom he reported, about the status of his leave. (*Id.* ¶¶ 11-13.) After January 6, 2023, "Plaintiff reached out to God[f]rey and confirmed in a conversation with him and someone in HR that he should continue updating Godfrey as to the status of his leave," and Plaintiff did so "about every week or so." (*Id.* ¶ 13.) Plaintiff worked with U.S. Bank and Bancorp's "leave department to obtain extensions on his leave that were approved in Workday and confirmed in emails from the 'Leaves Team, Human Resources.'" (*Id.*)

On June 21, 2023, Plaintiff was "surprise[d]" to receive an email from Jennifer Blum, a Human Resources employee who handled disability accommodations, "that Plaintiff's leave since January 6 was unapproved and that he needed his healthcare provider to complete and return certain paperwork to support his leave." (*Id.* ¶ 14.) After Blum received Plaintiff's doctor's paperwork, she "approved an extension on his leave as an accommodation from January 7 to August 31." (*Id.*)

On September 18, 2023, Blum emailed Plaintiff and asked if he needed to extend his leave. (*Id.* ¶ 15.) Plaintiff replied "that his doctor had requested another extension on his leave," and "also asked who his new supervisor was because he wanted to reach out and discuss his prior request to return to work on a reduced schedule." (*Id.*) Blum told Plaintiff "that his new supervisor was Nick Pirro," and that "Pirro had opened an HR case for a leave of absence accommodation and she was going to send a new form for his doctor to complete that included a reduced work schedule." (*Id.*)

At some point, Blum told Plaintiff "that any leave past 12 months would result in the termination of his employment." (*Id.* ¶ 16.) Concerned about this "definitive cutoff," Plaintiff emailed Blum on October 5 to confirm whether it would be on October 15 or October 16. (*Id.* ¶ 16.) Blum did not directly respond to Plaintiff's question, and instead told Plaintiff "she would review his leave once she received the documentation from his doctor." (*Id.*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                                               Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

    Around this same time, Plaintiff's doctor released him to return to work. (*Id.* ¶ 17.) "On Friday, October 13, Blum sent a letter confirming Plaintiff's return to work the next business day, Monday, October 16 and instructing him to contact his supervisor to discuss the logistics of his return." (*Id.*) Accordingly, on October 16, 2023, at 8:50 a.m., Plaintiff called Pirro on his direct office line to discuss his return to work. (*Id.*) When Pirro did not answer, Plaintiff left a voicemail, but Plaintiff never heard back. (*Id.*)

    On October 27, 2023, at 8:14 a.m., Plaintiff contacted Pirro a second time on his direct office line and left another voicemail. (*Id.* ¶ 18.) Again, Plaintiff never heard back. (*Id.*) That same day, Plaintiff received a letter from U.S. Bank and Bancorp referencing a change in the status of his employment. (*Id.*) "Plaintiff was confused because the letter included some information about unemployment insurance." (*Id.*) "Plaintiff therefore thought his employment had been terminated which explained why Pirro had not responded to him." (*Id.*)

    On October 31, 2023, Pirro finally contacted Plaintiff from Pirro's cell phone, leaving a voicemail and also texting Plaintiff that the number he called from was his cell phone number. (*Id.* ¶ 19.) On November 2, 2023, when Plaintiff and Pirro finally spoke, "Plaintiff explained his belief that he was no longer employed with [U.S. Bank and Bancorp] based on a letter he had recently received with unemployment insurance information. Pirro informed Plaintiff that there had been some layoffs and so he must have been included in them. Pirro asked that Plaintiff forward the information to him which Plaintiff did later that day via email." (*Id.*)

    On December 5, 2023, Pirro emailed Plaintiff, telling Plaintiff that Plaintiff was still in U.S. Bank and Bancorp's system and asking if Plaintiff was going to return to work. (*Id.* ¶ 20.) On December 8, 2023, Jodi Gartner ("Gartner"), a new Human Resources advisor that Plaintiff had never communicated with before, emailed Plaintiff and said that she was working on a Human Resources case that Plaintiff's manager had opened. (*Id.*)

    Gartner asked Plaintiff to tell her about his plan to return to work by December 12 because he had no claims open with The Hartford ("Hartford"). (*Id.*) On December 11, 2023, Plaintiff responded to Gartner's email and "expressed how difficult and stressful it had been

___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES  Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

___

during his disability leave and how he 'jumped through every hoop only to not be able to return to work as promised.'" (*Id.*) Plaintiff summarized his history of communications with Pirro and Blum, and his prior attempt to return to work. (*Id.*) He also explained how, until he received Pirro's December 5, 2023, email, Plaintiff understood that his employment had ended. (*Id.*) "Plaintiff had therefore moved out of his apartment that he could no longer afford, put his stuff into storage, moved out of California and had been staying with friends and family since he could not afford any new housing." (*Id.*)

That same day, Gartner responded via email that she confirmed with Pirro that Plaintiff was not laid off, and asked Plaintiff to submit medical documentation to Hartford because it had not received any and Plaintiff had no leave open. (*Id.* ¶ 21.) The following day, Plaintiff emailed Gartner back and reiterated the history of his October 16, 2023 attempt to return to work on, Pirro's failure to timely respond to allow him to return to work, Plaintiff's belief that he had been laid off (and the absence of any response from Pirro for weeks as to whether this was the case) and Plaintiff's "belief that he was being discriminated/retaliated against for his disabilities and accommodation requests," and "expressed his intent to file a complaint with the California Civil Rights Department for the Company's conduct to date." (*Id.*)

On December 13, 2023, Gartner replied that U.S. Bank and Bancorp expected Plaintiff to return to work on October 16, 2023, and "asked Plaintiff what had happened that he could not return to work at that time." (*Id.* ¶ 22.) "Plaintiff was extremely frustrated with the circumstances, especially since he had already communicated to Gartner the reasons why he did not return to work on October 16 in his prior December 11 email." (*Id.*) "Plaintiff therefore attempted to reach Gartner via phone on December 18 to speak with her about what had happened the past couple of months. She did not answer, so Plaintiff left a voicemail message and emailed Gartner asking for a call back." (*Id.*)

On December 19, 2023, Plaintiff and Gartner spoke on the phone "about [Plaintiff's] prior attempt to return to work on October 16 and his manager's failure to respond. [Plaintiff] also indicated that there would be no medical paperwork for any time off from work after October 16 because he tried to return to work and wasn't off from work since that time by

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                                                                 Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

choice." (*Id.* ¶ 23.) "Plaintiff was shocked when Gartner said that Pirro told her something different." (*Id.*) "Plaintiff reported again that he felt like he was being discriminated and retaliated against by Pirro for his disabilities and accommodation requests and that Pirro was trying to get rid of him." (*Id.*) "Plaintiff also reiterated to Gartner that he had left California because he was unable to continue living there without a paycheck. He then asked if he had to return to the Newport Beach office because it felt like Pirro was trying to get rid of him, and Gartner said yes. Plaintiff then said that if his only option was to return to work with Pirro at the Newport Beach office given the recent events, Plaintiff needed to discuss the logistics of his return." (*Id.*) Gartner told Plaintiff that she would escalate his case to legal and get back to him, but that because it typically took three days to hear from legal and she was going on vacation, she would get back to Plaintiff as soon as she could after they completed the investigation. (*Id.*) Gartner never followed up with Plaintiff. (*Id.* ¶ 24.)

About two weeks later, on January 3, 2024, Plaintiff received an email from Dean Monahan ("Monahan"), Vice President of Mortgage Retail Production Manager in the Greater Orange County area, with a cc: to Pirro. (*Id.* ¶ 25.) Although the email was sent from Monahan's email address, the substance of the email appeared to have been written by Pirro since it ended with his name after a closing salutation. (*Id.*) The email "explained that Plaintiff's leave since October 17 was not approved, and that when [Pirro and Plaintiff] spoke, Plaintiff indicated he was unsure whether he wanted to return to work. This was not the truth. Pirro further commented that Plaintiff had been on leave, he had since relocated and was no longer living in California. Pirro then said that it was unclear at that time if and when Plaintiff would actually return to work." (*Id.*) The email further stated, to Plaintiff's "shock[]," that due to "ongoing business needs and the indeterminate nature of [his] leave," U.S. Bank and Bancorp terminated his employment effective January 2, 2024. (*Id.*) "The Company's records initially stated that the termination of Plaintiff's employment was voluntary with the phrase 'dissatisfied with job.' However, a subsequent entry noted it was an involuntary termination." (*Id.*)

Based on these facts, Plaintiff asserts claims for (1) discrimination in violation of the FEHA against U.S. Bank and Bancorp, (2) retaliation in violation of the FEHA against

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES  Date: July 26, 2024

Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

---

U.S. Bank and Bancorp, (3) failure to prevent discrimination and retaliation in violation of the FEHA against U.S. Bank and Bancorp, (4) failure to accommodate disability in violation of the FEHA against U.S. Bank and Bancorp, (5) failure to engage in the interactive process in violation of the FEHA against U.S. Bank and Bancorp, (6) violation of the California Family Rights Act against U.S. Bank and Bancorp, (7) retaliation in violation of California Labor Code § 1102.5 against U.S. Bank and Bancorp, (8) wrongful termination in violation of public policy against U.S. Bank and Bancorp, and (9) intentional infliction of emotional distress against all Defendants.  (*Id.* ¶¶ 31-119.)

     U.S. Bank and Bancorp removed the case to this court, arguing that complete diversity exists because: (1) Plaintiff is a citizen of Texas; (2) U.S. Bank and Bancorp are citizens of Ohio, Delaware, and Minnesota; and (3) Pirro is a citizen of California.  (Dkt. 1 ¶¶ 16-27.)  With the Notice of Removal, Defendants filed the Declaration of Carina L. Novell ("Novell"), in which Novell declared: "On May 2, 2024, I conducted a comprehensive background report on Plaintiff Corey Hernandez.  The background check showed that Plaintiff's current address was located in Helotes, Texas.  It appears that Plaintiff relocated to Helotes, Texas on or around November 28, 2023, and is currently residing there.  The background report also confirmed that Plaintiff resided in Long Beach, California until November 15, 2023."  (Dkt. 6 ¶ 2.)

## II.  Legal Standard

     Federal courts are courts of limited jurisdiction with subject matter jurisdiction over only those suits authorized by the Constitution or Congress.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  When a suit originates in state court, a defendant may remove to federal court only when the suit could have been filed in federal court originally.  28 U.S.C. § 1441(a).  "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331."  *Peralta v. Hisp. Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005).

     Diversity jurisdiction requires complete diversity between the parties and that the amount in controversy exceeds $75,000.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES                                Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

---

(1806); 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000."); *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001) ("The diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant."). If a party is a partnership, limited liability company, or other unincorporated association, the court must consider the citizenship of each of the partners, including limited partners, or members, must be alleged. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Johnson*, 437 F.3d at 899. If a party is a corporation, the complaint must allege both its state(s) of incorporation and principal place of business. 28 U.S.C. § 1332(c); *Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012). If a party is a natural person, the complaint must allege their state of domicile, which is their permanent home, where they reside with the intention to remain or to which they intend to return. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citing *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988)); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.") (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

### III. Discussion

Plaintiff argues that this case should be remanded because the parties are not completely diverse as 28 U.S.C. Section 1332 requires. (*See generally* Mot.) The parties' dispute turns first on Plaintiff's citizenship. Plaintiff argues in the Motion that Plaintiff, like Pirro, is a

---

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.: 8:24-cv-01069-FWS-KES | Date: July 26, 2024 |
| Title: Corey Hernandez v. U.S. Bank National Association, *et al.* | |

citizen of California and therefore there has never been complete diversity. (Mot. at 1.) If Plaintiff is a citizen of Texas, as Defendant contended in the Notice of Removal, then there is complete diversity and the inquiry ends. If Plaintiff is a citizen of California, then the parties' dispute turns second on whether, as Defendant argues, Pirro was fraudulently joined. (*See generally* Opp.)

### A. Plaintiff's Citizenship

As noted, the first question is Plaintiff's citizenship. A natural person's citizenship is determined by where they are domiciled. *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely." *Id.* (cleaned up). "[D]etermination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id.* at 750. "When an action is removed on the basis of diversity, the requisite diversity must exist at the time the action is removed to federal court." *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985); *see also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) ("[T]he circuits have unanimously and repeatedly held that whether remand is proper must be ascertained on the basis of the pleadings at the time of removal.").

Here, Plaintiff maintains that he has been at all relevant times domiciled in California, even though for a period he resided elsewhere. (*See* Mot. at 2-3; Reply at 1-3.) Plaintiff explains the facts as follows. In November 2023, Plaintiff was forced to move out of the place he was renting in Long Beach, California because the owner sold it. (Dkt. 12-3 (Plaintiff's Declaration, "Pl. Decl.") ¶ 2.) Believing at the time that he had been laid off from his employment with U.S. Bank and Bancorp, and being unable to secure new housing without a paycheck, Plaintiff "stored all [his] personal belongings at the Signal Hill Self Storage facility in Signal Hill, California." (Pl. Decl. ¶¶ 4-5.) Although he traveled outside of California,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES　　　　　　　　　　　　　　　Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

including staying with family in Texas, Plaintiff "always intended to return to California especially when [he] learned on December 5, more than a month after [his] call with Mr. Pirro, that [he] was still employed with [U.S. Bank and Bancorp] in an email from [Pirro]." (*Id.*) In January 2024, Plaintiff returned to California, "stay[ing] at a friend's place in Garden Grove and at various hotels in Orange County in January, February, and early March 2024." (*Id.* ¶ 7.) On March 10, 2024, Plaintiff "entered into a lease agreement to rent a place in Westminster, California until June 9." (*Id.* ¶ 8, Ex. C.) This is where Plaintiff lived when this case was filed and removed, and "[t]hroughout this time, [he] intended to remain in California." (*Id.* ¶ 8.) On June 2, 2024, Plaintiff "entered into another lease agreement to rent a place in Garden Grove, California on a month-to-month basis." (*Id.* ¶ 9, Ex. D.) This is where Plaintiff currently lives, and he states that he still intends to remain in California. (*Id.* ¶ 9.) Plaintiff also notes that he has a California Driver License. (*Id.* ¶ 10, Ex. E.)

　　　Defendants, on the other hand, contend that Plaintiff's domicile changed to Texas when he left California in 2023. (*See* Opp. at 11-14.) In support of their position, Defendants point to Novell's "comprehensive background report on Plaintiff," which showed on May 2, 2024 "that Plaintiff's current address was located in Helotes, Texas" and that he "relocated to Helotes, Texas on or around November 28, 2023." (Novell Decl. ¶ 2.) Defendants also point to a December 11, 2023, email that Plaintiff sent Gartner, which included these statements:

> I've made life altering decisions due to the belief I was terminated. During the month of November, believing I was unemployed, I moved out of my apartment, moved all of my stuff into storage, left California and have since been staying with friends and family as I couldn't get new housing without a paycheck.

(Pl. Decl. Ex. A at 3.) Defendants argue that Plaintiff's statements in his declaration that his time in Texas was merely travel and that he always intended to return to California "lack[] credibility." (Opp. at 12.) Defendants further maintain that "Plaintiff's Motion, Declaration, and attached exhibits do not establish Plaintiff's domicile in California" because the March 10, 2024 to June 9, 2024 lease "indicates an intent to reside in California for only a finite period of

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                              Date: July 26, 2024

Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

time," and the June 7, 2024 month-to-month lease "is an unsigned, faintly watermarked 'In Progress' draft of a lease" and "[f]ailure to provide a final, effective agreement makes the June Lease unreliable and insufficient for establishing Plaintiff's domicile in California." (*Id.* at 12-13.) Defendants also argue that the California Driver License "does not establish domicile without additional facts, e.g., that [Plaintiff] has not since obtained a drivers' license in another state and the California drivers' license is his only license." (*Id.* at 13.) In addition, Novell filed a further declaration in support of the Opposition stating that "[t]he background report indicates that Plaintiff has resided in several other states including Missouri, Oklahoma, Kansas and Texas" and "has also held a driver's license in at least two states other than California, and continues to use a cellular telephone number that was issued in the state of Missouri." (Dkt. 18-1 ¶ 2.)

       Based on the record before the court, the court finds that Plaintiff's domicile at all relevant times was in California. The parties do not dispute that Plaintiff was domiciled in California until November 2023. (*See* NOR ¶ 16 (Defendant contending that Plaintiff "moved out of California on or around November 2023"); Pl. Decl. ¶ 2 (Plaintiff declaring that "[f]rom the start of [his] employment up until November 30, 2023, [he] lived in Long Beach, California and intended to remain in California"). And "a person's old domicile is not lost until a new one is acquired." *Lew*, 797 F.2d at 750. "A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* Moreover, "courts have created a presumption in favor of an established domicile as against a newly acquired one." *Id.* at 751. The court finds that Defendants have not offered sufficient evidence to support a finding that Plaintiff ever acquired a new domicile outside of California. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001) ("[T]he party asserting diversity jurisdiction bears the burden of proof."). Defendants' description of the background report obtained (which report they do not provide) does not sufficiently establish that Plaintiff ever had an intention to remain in Texas indefinitely, and Defendants' arguments that Plaintiff's evidence is unpersuasive or lacks credibility also do not sufficiently establish that Plaintiff's California domicile was ever lost. *See Lew*, 797 F.2d at 750.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES              Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

Because the court concludes that Plaintiff was domiciled in California, the court turns to the question of whether Pirro—who, as also a California citizen, would destroy complete diversity—was fraudulently joined.

### B. Whether Pirro Was Fraudulently Joined

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). However, courts apply both a "strong presumption against removal jurisdiction," *Gaus*, 980 F.2d at 566, and a "general presumption against fraudulent joinder," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citation omitted). Accordingly, "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden'" of proving fraudulent joinder by "clear and convincing evidence." *Grancare*, 889 F.3d at 548; *see also Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

A defendant may establish fraudulent joinder through: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). Under the second method, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)); *see also Grancare*, 889 F.3d at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").

Defendants argue Pirro was fraudulently joined under the second theory, contending that "Pirro was fraudulently joined because Plaintiff's single cause of action against Pirro for" intentional infliction of emotional distress ("IIED") "fails as a matter of law" because

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES                                              Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

(1) Plaintiff's IIED claim against Pirro is barred by Workers' Compensation exclusivity, and (2) Plaintiff cannot state a claim for IIED against Pirro.  (Opp. at 5-11); *see Hunter*, 582 F.3d at 1044.

### 1. Workers' Compensation Act Exclusivity

With a few exceptions not relevant here, the California Workers' Compensation Act ("WCA") is the "exclusive remedy" for employee actions alleging injuries "against any other employee of the employer acting within the scope of his or her employment."  Cal. Lab. Code § 3601(a).  This includes emotional injuries.  *See Livitsanos v. Superior Court*, 2 Cal. 4th 744, 753 (1992) ("[C]ompensable injuries [under the WCA] may be physical, emotional or both, so long as they are disabling.").  Accordingly, "claims for emotional distress caused by the employer's conduct causing distress such as discharge, demotion, discipline or criticism" are generally "preempted by the [WCA], even when the employer's acts causing the distress are intentional or outrageous."  *De Peralta v. Fox Rest. Concepts, LLC*, 2018 WL 748287, at *3 (C.D. Cal. Feb. 6, 2018) (quoting *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1054 (C.D. Cal. 2013)); *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) ("[E]motional injuries sustained in the course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action.").

However, there are exceptions to WCA preemption for "conduct that contravenes fundamental public policy" and that "exceeds the risks inherent in the employment relationship."  *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008) (quoting *Livitsanos*, 2 Cal. 4th at 754).  There is "no bright line test" for "determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain," and what is "so far out of the normal risks of the employment relationship as to be beyond the reach of Workers' Compensation."  *Ledezma v. Walmart Inc.*, 2018 WL 6830492, at *3 (C.D. Cal. Dec. 21, 2018).  But "discrimination and retaliation fall outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on discrimination and retaliation are not subject to workers' compensation exclusivity." *Barringer v. Wal-Mart Stores, Inc.*, 2022 WL 4356106, at *2 (C.D. Cal. Sept. 19, 2022) (citing *Light v.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES  Date: July 26, 2024

Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

*Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017); *Saunders v. Sally Beauty Supply LLC*, 2020 WL 1847620, at *2 (C.D. Cal. Apr. 10, 2020)).

"A plaintiff need not perfectly allege a claim that falls outside WCA preemption in order to avoid a finding of fraudulent joinder." *Id.* Indeed, courts in the Central District of California have given significant leeway to plaintiffs whose pleadings did not explicitly tie their emotional distress claim to conduct beyond the normal employment relationship where the courts concluded it was possible that the plaintiffs could amend their pleadings to make that connection. *See, e.g.*, *Hassler v. Talbots, Inc.*, 2019 WL 4221390, at *3 (C.D. Cal. Sept. 5, 2019) (rejecting fraudulent joinder argument based on WCA preemption because "it is *possible* for Hassler to state a claim for IIED against [the nondiverse defendant] that survives WCA preemption so long as she alleges discriminatory conduct which goes beyond the normal employment relationship") (emphasis in original); *Ledezma*, 2018 WL 6830492, at *4 (similar); *Golda v. Residence Inn by Marriott, LLC*, 2019 WL 102375, at *3 (C.D. Cal. Jan. 4, 2019) (rejecting fraudulent joinder argument and remanding where the plaintiff failed to "explicitly tie his IIED claim to retaliation," but "[i]f pled more carefully in a subsequent amended complaint, these theories could possibly support a cause of action for IIED that falls outside the normal employment relationship, and therefore outside of WCA preemption"); *Paleg v. Kmart Corp.*, 2017 WL 2974923, at *3 (C.D. Cal. July 11, 2017) (remanding and concluding on this issue that "there is a non-fanciful possibility that Plaintiff's IIED claim against [the nondiverse defendant] is not barred by the WCA" because "there is still a possibility Plaintiff will be able to establish" that his termination was due to age discrimination).

Plaintiff alleges that Defendants discriminated against him and retaliated against him, and that "he felt like he was being discriminated and retaliated against by Pirro for his disabilities and accommodation requests and that Pirro was trying to get rid of him." (Compl. ¶ 23.) Plaintiff further alleges that as a result of Defendants' conduct, he suffered "severe and extreme emotional distress (and an exacerbation of his existing mental health conditions)." (*Id.* ¶ 113.) The court finds there is a "non-fanciful possibility" that Plaintiff could amend his complaint to show that the emotional distress he suffered was due to discriminatory or retaliatory conduct

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.: 8:24-cv-01069-FWS-KES | Date: July 26, 2024 |
| Title: Corey Hernandez v. U.S. Bank National Association, *et al.* | |

---

outside the normal employment relationship, if Plaintiff does not already sufficiently so allege. *Barringer*, 2022 WL 4356106, at *3 ("There is a 'non-fanciful possibility' that Plaintiff could amend her complaint to show that the emotional distress she suffered was due to discriminatory, retaliatory, or harassing conduct outside the normal employment relationship, if she does not already allege that sufficiently." (citing *Paleg*, 2017 WL 2974923, at *3; *De Peralta*, 2018 WL 748287, at *4 (rejecting fraudulent joinder argument based on WCA preemption because assertions that Plaintiff was terminated because of an injury were "sufficient to remove the IIED claim from the WCA's preemptive effect because they imply disability discrimination"); *Walker v. Avis Rent A Car Sys., LLC*, 2015 WL 13752943, at *6 (C.D. Cal. July 6, 2015) (rejecting fraudulent joinder and remanding after concluding that "[b]ecause Plaintiff's IIED claim is based on the conduct that arose from alleged illegal disability discrimination, it is not preempted by the WCA"); *Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009) ("Because this claim is based on allegations of disability discrimination, there is a non-fanciful possibility that the workers' compensation exclusivity provisions do not bar Barsell's claim against [her manager].")). Accordingly, the court concludes that Defendants have failed to carry their burden to show that Pirro was fraudulently joined on the basis that Plaintiff's IIED claim against Pirro is necessarily barred by WCA exclusivity.

### 2. Ability to State an IIED Claim

Defendants next argue that Pirro was fraudulently joined because Plaintiff cannot state a claim for IIED against him, specifically maintaining that Pirro's alleged conduct was "Neither Outrageous Nor Negligent Under the Law." (Opp. at 7-9.) To state a claim for IIED, a plaintiff must sufficiently allege that (1) the defendant subjected him to extreme and outrageous conduct; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 59, 593 (1979). To be outrageous, conduct "must be so extreme as

---

---

| UNITED STATES DISTRICT COURT | |
|---|---|
| CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
| CIVIL MINUTES – GENERAL | |

| | |
|---|---|
| Case No.: 8:24-cv-01069-FWS-KES | Date: July 26, 2024 |
| Title: Corey Hernandez v. U.S. Bank National Association, *et al.* | |

to exceed all bounds of that usually tolerated in a civilized society." *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).

The court finds Defendants have not met their burden of demonstrating that Plaintiff cannot sufficiently allege that Pirro's conduct was outrageous. Plaintiff alleges that Pirro repeatedly interfered with Plaintiff returning to work from his authorized leave by failing to promptly respond to Plaintiff's communications, including by lying. (Compl. ¶ 113 ("Defendants went so far as to falsely claim that it was unclear if and when Plaintiff would actually return to work especially when there are written communications stating otherwise and use that false reason as the basis for the termination of his employment after Plaintiff repeatedly communicated his belief that he was being subjected to discrimination and retaliation."); *see* Opp. at 7 (arguing that Pirro is the one who made the false claim).) "This might state a plausible claim for intentional infliction of emotional distress." *Barringer*, 2022 WL 4356106, at *3.

Defendants also argue that Plaintiff cannot state an IIED claim against Pirro "because managers like Pirro are immune from tort claims predicated on personnel-related actions, such as managing an employee's medical leave and termination." (Opp. at 9-11.) But "[m]anagerial conduct can give rise to IIED claims when it is 'extreme and outrageous' and 'goes beyond the act of termination,'" and "managerial immunity 'has no place in a case where an employee alleges that a manager acted with discriminatory intent.'" *Lorenz v. United Parcel Serv., Inc.*, 2019 WL 3254220, at *3 (C.D. Cal. July 19, 2019) (quoting *Morris v. Mass. Elec. Constr. Co.*, 2015 WL 6697260, at *2 (C.D. Cal. Nov. 3, 2015)). Because Plaintiff alleges that Pirro acted with discriminatory and retaliatory intent, and that his conduct was extreme and outrageous, (Compl. ¶¶ 23, 113), the court finds Defendants have not met their burden of demonstrating that managerial immunity bars Plaintiff's IIED claim against Pirro. *See Lorenz*, 2019 WL 3254220, at *3.

Finally, the court finds that "[e]ven if Plaintiff's current allegations are insufficient, it is possible that Plaintiff could cure any insufficiencies in [his] complaint through amendment—a possibility that has led courts to remand similar cases." *Barringer*, 2022 WL 4356106, at *3

---

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KESDate: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

---

(citing *De Peralta*, 2018 WL 748287, at *5). Indeed, "in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared relatively weak." *Id.* (citing *Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)); *see also Hunter*, 582 F.3d at 1043 ("[I]f there is *any* possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." Courts even remand cases even when the potential liability against the purportedly-fraudulently-joined-defendant, "while possible, is actually quite unlikely." *Waterman v. Wells Fargo & Co.*, 2018 WL 287171, at *7 (C.D. Cal. Jan. 4, 2018). And the court finds that Defendants have not shown by clear and convincing evidence that Plaintiff could not possibly state a claim against Pirro. *See Grancare*, 889 F.3d at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."); *McBee v. Raytheon Techs. Inc.*, 2024 WL 182282, at *6 (C.D. Cal. Jan. 16, 2024) ("The propriety of remand based on fraudulent joinder depends solely on whether a claim against the purported sham defendant may be stated, not whether one has been or may be stated based on the present or future evidentiary record. . . For that reason, courts routinely grant motions to remand even where, as here, a plaintiff has not yet stated a viable claim against the purportedly fraudulently joined defendant and/or the present evidentiary record would not support liability as to the purportedly fraudulently joined defendant.") (cleaned up).

Based on the court's finding that Defendants have not shown by clear and convincing evidence that Plaintiff cannot possibly state an IIED claim against Pirro, the court concludes that Defendants have failed to meet their burden of showing that Pirro was fraudulently joined such that his citizenship should be disregarded for purposes of establishing diversity jurisdiction.

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01069-FWS-KES  Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

### C. Summary of Complete Diversity

In summary, the court finds that Plaintiff has submitted sufficient evidence to support that Plaintiff is a California citizen and Defendants have not submitted sufficient evidence to show that Plaintiff ever lost his California domicile. In addition, the court finds that Defendants have not met their burden to show that Pirro was fraudulently joined. Considering Pirro's citizenship means that the parties are not completely diverse, as both Plaintiff and Pirro are California citizens. Accordingly, the court lacks subject matter jurisdiction over this case and it must be remanded. *See Caterpillar Inc.*, 519 U.S. at 68 (stating diversity jurisdiction "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant."); *Kuntz*, 385 F.3d at 1181 ("For a case to qualify for federal jurisdiction under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship between the parties opposed in interest."). Therefore, the Motion is **GRANTED** and this case is **REMANDED** to Orange County Superior Court.

### D. Fees

Finally, Plaintiff asks the court to award $10,500 in attorney fees under 28 U.S.C. § 1447(c). (Mot. at 8; Reply at 9.) "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Whether to award costs and expenses is within a district court's discretion. *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).

After reviewing the parties' arguments and the evidence presented, the court exercises its discretion to decline awarding fees here. Defendants' arguments that Plaintiff is not a citizen of

_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01069-FWS-KES                              Date: July 26, 2024
Title: Corey Hernandez v. U.S. Bank National Association, *et al.*

_____

California and that Pirro was fraudulently joined did not lack any objectively reasonable basis, nor was Defendants' asserted basis for removal clearly foreclosed by relevant caselaw. *See Barringer*, 2022 WL 4356106, at *4 ("While the Court concludes that Plaintiff could assert a plausible claim against Velasco that is not preempted by the WCA, the Court does not find Wal-Mart's arguments in support of removal objectively unreasonable. An award of fees is therefore not warranted."); *see also Waterman*, 2018 WL 287171, at *8 ("Given that removal in this action was at least colorable, Plaintiff's request for costs and attorneys' fees is **DENIED**."). Indeed, "courts have noted that part of the difficulty in relying upon workers' compensation exclusivity to satisfy the fraudulent joinder standard is the lack of certainty in the law on this subject." *Saunders*, 2020 WL 1847620, at *2. Accordingly, the court **DENIES** Plaintiff's request for attorney fees.

## IV.   Disposition

For the reasons stated above, the court **GRANTS** Plaintiff's Motion and **REMANDS** this action to Orange County Superior Court as case number 30-2024-01393239-CU-WT-CJC.

Because the court finds it lacks subject matter jurisdiction and remands the case, Defendants' pending Motion for Judgment on the Pleadings (Dkt. 15) is **DENIED AS MOOT**. The hearing on that motion set for August 1, 2024, is **VACATED** and off calendar.

Initials of Deputy Clerk: mku

_____